IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON

MICHAEL D. HICKS,

      Petitioner,

v.                      Case No. 2:08-cv-01365

DAVID BALLARD, Warden,
Mount Olive Correctional Complex,

      Respondent.

## PROPOSED FINDINGS AND RECOMMENDATION

On November 25, 2008, Petitioner filed a Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2254 (docket sheet document # 1) and Memorandum of Law in support thereof (# 2). This matter is assigned to the Honorable David A. Faber, Senior United States District Judge, and it is referred to the undersigned United States Magistrate Judge for submission of proposed findings and a recommendation for disposition, pursuant to 28 U.S.C. § 636(b)(1)(B).

On December 11, 2008, the undersigned ordered that Respondent file an answer or other response to the petition by January 30, 2009 (# 5). After being granted an extension of time to file a response, on March 2, 2009, Respondent filed a Response to Petition for Writ of Habeas Corpus (# 10), a Motion to Dismiss Petition as Untimely Filed, with accompanying exhibits (# 11), and a Memorandum of Law in support thereof (# 12). Respondent's motion asserts that Petitioner's section 2254 petition is untimely under 28 U.S.C. §

2244(d)(1).

On March 24, 2009, Petitioner filed a Response to Respondent's Motion to Dismiss, including exhibits (# 20).  On April 28, 2009, Respondent filed a Reply to Petitioner's Response (# 21).  On July 30, 2009, Petitioner filed a sur-reply, which the undersigned subsequently granted Petitioner leave to file.  (## 24 and 25).

As will be further explained below, the sur-reply addressed the issue of whether Petitioner was provided with a report concerning DNA test results that excluded him as the depositor of blood on a specific piece of physical evidence.  The undersigned's August 6, 2009 Order granting leave to file the sur-reply further directed Respondent to file a response to the sur-reply addressing the disclosure of the DNA report.  (# 25).  On August 21, 2009, Respondent filed his response to the sur-reply.  (# 26).  The matter is now ripe for determination.

## PROCEDURAL HISTORY

On or about December 12, 1994, Petitioner was indicted by a Kanawha County Grand Jury on one count of Murder.  State v. Hicks, Case No. 04-F-405.  (# 11, Ex. 1).  Petitioner was initially convicted of the murder charge, following a jury trial, on or about May 26, 1995.  However, his conviction was reversed by the Supreme Court of Appeals of West Virginia (the "SCAWV"), and he was retried under the indictment.  See State v. Hicks, 482 S.E.2d 641 (W. Va. 1996).

2

Following his second trial on October 27-28, 1998, Petitioner was convicted of First Degree Murder without a recommendation of mercy.  (# 11, Ex. 2).  By Order entered November 18, 1998, Petitioner was sentenced to life imprisonment without the possibility of parole.  (<u>Id.</u>, Ex. 3).

Petitioner filed a Petition for Appeal concerning his conviction in the SCAWV on April 9, 1999.  The Petition for Appeal was refused by the SCAWV on October 6, 1999.  (<u>Id.</u>, Ex. 4).

On January 5, 2001, Petitioner filed a Petition for a Writ of Habeas Corpus in the Circuit Court of Kanawha County (Case No. 01-MISC-3).  (<u>Id.</u>, Ex. 5).  An evidentiary hearing was held in that matter on March 11, 2004.  By order entered May 10, 2004, the Circuit Court addressed the merits of Petitioner's claims and denied the petition.  (<u>Id.</u>, Ex. 6).

On October 15, 2004, Petitioner filed a Petition for Appeal from the denial of his Circuit Court habeas corpus petition.  On January 19, 2005, the SCAWV refused that petition.  (<u>Id.</u>, Ex. 7).

Petitioner filed a second habeas corpus petition in the Circuit Court of Kanawha County on August 1, 2006 (Case No. 06-MISC-312).  (<u>Id.</u>, Ex. 8).[1]  A hearing was held on that petition on February 23, 2007.  (# 1, Appx. D).  On January 7, 2008, the

_____

[1]   As will be discussed further below, this petition was prompted by the SCAWV's decision in <u>In the Matter of: Renewed Investigation of the State Police Crime Laboratory, Serology Division</u>, 633 S.E.2d 762 (W. Va. 2006) (popularly known as "<u>Zain III</u>").

Circuit Court denied the second habeas corpus petition.  (<u>Id.</u>, Appx. C).

        Petitioner filed a Petition for Appeal from the denial of his second Circuit Court habeas corpus petition on May 16, 2008.  (<u>Id.</u>. Appx. B).  The SCAWV refused the Petition for Appeal on September 4, 2008.  (<u>Id.</u>, Appx. A).  Petitioner filed a Petition for a Writ of Certiorari in the Supreme Court of the United States on November 10, 2008.  That petition was denied on January 26, 2009.  <u>Hicks v. McBride</u>, 2007 WL 160717 (Jan. 26, 2009).  (# 11, Ex. 9). Petitioner filed the instant section 2254 petition on November 25, 2008.

**<u>ANALYSIS</u>**

**A.   Respondent's Motion to Dismiss Petition as Untimely.**

        On April 24, 1996, a one-year limitation for filing of federal habeas corpus petitions was enacted as part of the Antiterrorism and Effective Death Penalty Act of 1996 ("the AEDPA").  The AEDPA provides, in part, that:

> (1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court.  The limitation period shall run from the latest of –
>
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or law of the United States is removed, if the applicant was prevented from filing by such State action;

4

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1).  Section 2244(d)(2) further provides:

The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d)(2).

Respondent has filed a Motion to Dismiss Petitioner's section 2254 petition as being time-barred under the provisions above (# 12).  The circumstances surrounding Petitioner's state habeas corpus proceedings are significant to a determination of whether his section 2254 petition is time-barred.

Petitioner's conviction became final on January 4, 2000, upon the expiration of the 90-day period in which he could have filed a Petition for a Writ of Certiorari, following the denial of his direct appeal.  Thus, under section 2244(d)(1)(A), Petitioner had until January 4, 2001, to file a section 2254 petition, unless Petitioner had properly filed an application for state post-conviction or other collateral review, which would toll the statute during the pendency of those proceedings.  28 U.S.C. § 2244(d)(2).

On January 4, 2001, the last day of the limitation period, Petitioner, proceeding pro se, filed his first habeas corpus

5

petition in the Circuit Court of Kanawha County. (<u>Hicks v. Painter</u>, Case No. 01-MISC-3).[2]  The filing of that petition tolled the statute of limitations until January 19, 2005, when the SCAWV refused Petitioner's Petition for Appeal from the denial of his first Circuit Court habeas corpus petition.  The limitation period expired the next day, January 20, 2005.  Under this calculation, Petitioner's present section 2254 petition, which was not filed until November 25, 2008, is clearly outside the limitation period.

**B.   Petitioner's argument for a different calculation of the statute of limitations or for equitable tolling thereof.**

In Ground One of his section 2254 petition, Petitioner claims that false evidence was offered at his trial, rendering his trial fundamentally unfair.  (# 1 at 7, Ground One).  In support of this claim, Petitioner's petition states:

> At his October 28, 1998, trial for first degree murder a state witness Trooper Howard B. Myers told Petitioner's jury that petitioner could not be excluded as a contributor to blood found on a wall molding and a tennis shoe which was part of the state's evidence.  After his trial, Trooper Howard B. Myers conducted additional test[ing] on the evidence, using more sophisticated equipment.  Upon the results of the more sophisticated test, Lt. Myers eliminated Petitioner as a possible contributor of the blood found on the wall molding and tennis shoe.  In addition, Lt. Myers concluded that the blood belonged to one of the state's key witnesses, Terri Bannister, who admitted she lowered [sic; lured?] the

---

[2]  Although this habeas corpus petition was received and filed by the Circuit Court on January 5, 2001, by applying the "prison mailbox rule" as announced in <u>Houston v. Lack</u>, 487 U.S. 266, 270-71 (1988), Petitioner attested that he gave the petition to prison authorities for mailing on January 4, 2001.  Accordingly, the petition should be deemed to have been filed as of January 4, 2001.

victim back to the trailer on the night of his murder, but denied any involvement in the actual murder.[3]

(Id. at 8, Supporting Facts of Ground One).  In Ground Two of his section 2254 petition, Petitioner alleges:

> The West Virginia State Police Crime Laboratory intentionally failed to perform DNA testing on certain evidence, specifically a Caucasian hair, a letter, and other evidence located in the state's evidence which could exculpate the Petitioner.

(Id. at 9, Ground Two).  In support of this claim, Petitioner's petition further states:

> At his October 28, 1998, trial there was certain evidence items which were not tested.  In this regard, the police located - (1) an envelope addressed to Glen Cain with a bloody fingerprint on it, (2) a Caucasian hair follicle, and other items with blood on them.  These items were found in and around the murder evidence, and were part of the state's evidence used before the jury.
>
> On February 23, 2007, [see, Trn Feb 23, 2007], Lt. Howard B. Myers explained away his failure to test these evidence items, by explaining that either no one asked him to test some, or that he did not have the proper equipment to test the items.

(Id. at 9, Supporting Facts of Ground Two).

---

[3]  The undersigned is not in possession of Petitioner's trial transcripts; however, from a review of Petitioner's Petition for Appeal from the denial of his Zain III habeas corpus petition, it appears that Petitioner raised an alibi defense and maintains that he was not present at the time of the crime.  The State presented the testimony of two witnesses, Carli Campbell, a Caucasian female, and Terri Bannister, an African American female, who claim to have been present in a trailer (which belonged to Bannister's uncle, and in which Bannister and Petitioner had previously cohabited), when Petitioner killed the victim.  Both Campbell and Bannister denied any involvement in the murder itself, but Bannister admitted to helping move the victim's body and clean up the crime scene. Petitioner contends that either Campbell or Bannister, or both of them, could have committed the murder.

On June 16, 2006, the SCAWV issued its opinion in In the Matter of: Renewed Investigation of the State Police Crime Laboratory, Serology Division, 633 S.E.2d 762 (W. Va. 2006) (popularly known as "Zain III"). In Zain III, the SCAWV specifically held:

> In order to guarantee that the serology evidence offered in each prisoner's prosecution will be subject to searching and painstaking scrutiny, this Court now holds that a prisoner who was convicted between 1979 and 1999 [footnote omitted] and against whom a West Virginia State Police Crime Laboratory serologist, other than Fred Zain, offered evidence may bring a petition for a writ of habeas corpus based on the serology evidence despite the fact that the prisoner brought a prior habeas corpus challenge to the same serology evidence and the challenge was finally adjudicated.

Id. at 770 (emphasis added).

The Zain III decision further stated that "a prisoner who challenges his or her conviction must prove that the serologist offered false evidence in his or her prosecution." Also the prisoner must satisfy the following standards indicating that a new trial is warranted: (1) The evidence must appear to have been discovered since trial, and, from the affidavit of the new witness, what such evidence will be, or its absence satisfactorily explained; (2) It must appear from facts stated in his affidavit that the defendant was diligent in discovering the new evidence, and that it could not have been discovered with due diligence before the trial; (3) Such evidence must be new and material, and not merely cumulative; (4) The evidence must be such that it ought

8

to produce an opposite result at a new trial on the merits; and (5) A new trial will generally be refused if the sole object of the new evidence is to discredit or impeach an opposing witness.  Id. at 769 (citing State v. Frazier, 253 S.E.2d 534 (W. Va. 1979)).

Concerning the special procedures, the SCAWV further held that a prisoner against whom a serologist other than Fred Zain offered evidence is to be granted a full habeas corpus hearing on the issue of the serology evidence, with counsel appointed to represent him or her.  The Court further held that the Circuit Courts must review the serology evidence "with searching and painstaking scrutiny" and must draft "a comprehensive order" which includes "detailed findings as to the truth or falsity of the serology evidence."  If the Circuit Court finds that the evidence was false, then the Circuit Court must determine whether the prisoner has shown the necessity of a new trial based on the five Frazier factors.  Id.

Petitioner filed a Zain III habeas petition on August 1, 2006. Petitioner had already filed an unsuccessful habeas corpus petition in the Circuit Court of Kanawha County, in which the DNA testing was at issue.  On February 23, 2007, Trooper Myers testified in Petitioner's Zain III habeas proceeding that new DNA testing on the ceiling molding and the tennis shoe, conducted in 2003-2004 (during the course of Petitioner's first state habeas proceedings), had eliminated Petitioner as the depositor of blood on those items. Petitioner claims that this new evidence indicates that he is actually innocent of the crime.

Nevertheless, the state habeas court denied Petitioner's <u>Zain III</u> habeas petition, finding that Petitioner had not demonstrated that a new trial was warranted.  The state habeas court reasoned that, because DNA testing, and not the conventional "serology testing" that had previously been performed by the State Police Crime Laboratory, had been done in Petitioner's case, the <u>Zain III</u> decision was inapplicable to Petitioner's case.  Specifically, the state habeas court held:

> Evidence in the record clearly indicates that serology evidence was not offered against Petitioner at his trial. Rather, the testimony of Lt. Myers established that DNA evidence was offered against the Petitioner. The scientific reliability of DNA evidence has been well established by the Supreme Court of Appeals of West Virginia for years and Petitioner does not allege that the DNA testing at issue was falsified in any way. See, e.g., Syl. Pt. 3, <u>State v. Woodall</u>, 182 W. Va. 15 (1989). As there is no evidence that this case falls within the ambit of [<u>Zain III</u>], Petitioner's attempted reliance on that case is misplaced.

> Further, this court finds that there is no evidence that the West Virginia State Police Crime Laboratory intentionally failed to perform DNA testing on certain evidence that could exculpate Petitioner. Rather, the evidence suggests that there were valid reasons why evidence was not tested.

> Finally, although Petitioner asserts that he should be granted a new trial based on the results of the more advanced DNA testing, this evidence was previously presented to this Court during Petitioner's prior habeas petition, and this Court previously found that the results of the advanced DNA testing did not call into question the jury's verdict. Without any new evidence tending to call the jury's verdict into question, this Court has no reason to change its prior finding.

> Accordingly, this Court concludes that Petitioner has not presented any grounds for relief that provided a predicate for the issuance of a writ of habeas corpus or

the granting of a new trial.

(# 1 at 28-29, Appendix C).  The SCAWV refused Petitioner's appeal of the denial of his <u>Zain III</u> petition on September 4, 2008.[4] Petitioner then filed the instant section 2254 petition on November 25, 2008, again asserting his false evidence claim.

In his petition, and in response to Respondent's Motion to Dismiss, Petitioner has asserted that the decision of the SCAWV in <u>Zain III</u> or, more specifically, the testimony provided by Trooper Myers in Petitioner's <u>Zain III</u> habeas proceeding on February 23, 2007, served as an event that triggered the application of 28 U.S.C. § 2244(d)(1)(D) to his case, which, according to Petitioner, makes his present section 2254 petition timely.  Section 2244(d)(1)(D) provides that the one-year statute of limitations shall run from "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence."

In his petition, Petitioner addressed the statute of limitations as follows:

This petition is not barred by the statute of limitations contained in 28 U.S.C. § 2244(d) because in this case, 28 U.S.C. § 2244(d)(1)(D)[,] <u>Dobbs v. Zant</u>, 506 U.S. 357,

---

[4]  Petitioner also filed a Petition for a Writ of Certiorari in the Supreme Court of the United States on November 10, 2008. That petition was denied on January 26, 2009.  <u>Hicks v. McBride</u>, No. 08-7639, 2009 WL 160717 (Jan. 26, 2009).  (# 11, Ex. 9).  The undersigned notes, however, that the time in which a Petition for a Writ of Certiorari concerning the denial of a habeas petition is not included in a tolling period under the AEDPA.  <u>See</u> <u>Lawrence v. Florida</u>, 549 U.S. 327 (2007).

> 113 S. Ct. 835, 122 L. Ed.2d 103 (1993), is controlling
> in that Petitioner's claim relies on facts that he could
> not have discovered earlier even with "due diligence."
> He further states that the [sic] these facts combined
> with the other facts of the record establishes by "clear
> and convincing" evidence that "but for" the
> constitutional error he is challenging, no reasonable
> juror would have found him guilty of the offense with
> which he is charged.

(# 1 at 10).  Petitioner then discussed the <u>Zain III</u> decision and

his subsequent habeas corpus proceedings thereunder.

Petitioner's Response to the Motion to Dismiss further

addresses the statute of limitations issue as follows:

> In his March 11, 2004, report, Trooper Howard Brent Myers
> specifically noted he did in fact have in his possession
> a swab of human DNA recovered from the tennis shoe
> introduced into evidence suggested to be that of
> Petitioner.  However, relevant to whether Petitioner is
> entitled to the current habeas petition on his claim that
> the results of the DNA swab extracted from this shoe were
> not disclosed to him prior in time, Officer Myers noted
> in his March 10, 2004, report as follows: *The results
> from the tennis shoe are not being reported pending
> further testing.* (Appendix-A).  Thus although Myers['] 
> report was released by March 11, 2004, he did not
> disclose the results of the DNA found on the tennis shoe
> at that time, the very subject in question herein.  For
> this reason Section 2244(d)(1)(D) of the statute applies,
> because the claim of false serology based on the state's
> presentment of the DNA swab from the aforesaid shoe, and
> the late disclosure of those results, which excluded
> Petitioner as a contributor of the DNA swab at his August
> 1, 2006, habeas hearing, all support the conclusion that
> this claim relies on facts that Petitioner could not have
> discovered, even with "due diligence."

(# 20 at 4).

On April 28, 2009, Respondent filed a reply brief in which he

argues that the <u>Zain III</u> decision has no effect on the previously

expired statute of limitations because Petitioner has not

demonstrated that his <u>Zain III</u> proceeding led to the discovery of new evidence that warranted a new trial.   Respondent further asserts that the "new evidence" upon which Petitioner relies (that is, the test results and testimony of Trooper Myers indicating that the blood on the ceiling molding and tennis shoe was not Petitioner's) was actually presented in his first state habeas corpus proceeding, which was denied on May 10, 2004.[5] (# 21 at 1-2).

On July 14, 2009, Petitioner wrote a letter to the Clerk inquiring of his right to file a sur-reply, and indicating that there are material facts and comments within Respondent's reply to which Petitioner objects.  (# 22).  On July 30, 2009, Petitioner filed a sur-reply and an affidavit in support thereof (# 24).  The sur-reply states in pertinent part:

> On March 31, 2009, Petitioner filed his response to the Respondent's motion to dismiss including exhibits indicating he did not receive the results of test performed on a tennis shoe at the time of his prior habeas hearing.
>
> On April 28, 2009, the Respondent filed an action entitled RESPONDENT'S REPLY along with an exhibit (Exhibit-12) indicating that the State Police Crime Lab (H.B. Myers) had completed testing results on the shoe in question on or about April 9, 2004.   However, the Respondent did not include any evidence that Petitioner ever received the results of the testing of DNA on the shoe found at the crime scene.

---

[5]   The subsequent report addressing both the ceiling molding and the tennis shoe is dated April 9, 2004.  (# 21, Ex. 12) Petitioner's first habeas hearing was held on March 11, 2004.

> Based on the circumstances indicated above and for the interest of justice, Petitioner ask[s] that the Court grant him leave to file the present response despite not having ordered him to do so.
>
> Petitioner further states that he has never received, prior to his August 1, 2006, habeas hearing a copy of the results of the DNA testing completed by H.B. Myers on April 9, 2004, and disclosed by the Respondent on April 28, 2009.  Petitioner has therefore enclosed an affidavit in support of the position that he has not received the results of the DNA testing in this case, prior in time (See, Exhibit-A).

(# 24 at 1-2).  In his Affidavit, despite the fact that, during the February 23, 2007 habeas hearing, Trooper Myers testified concerning the results of the April 9, 2004 DNA test results on the tennis shoe, Petitioner reiterates that he was not aware of the April 9, 2004 DNA report until it was attached as an exhibit to Respondent's Reply in this matter which was filed on April 28, 2009.  (# 24, Ex. A).

The undersigned found that a determination of the applicability of 28 U.S.C. § 2244(d)(1)(D) to Petitioner's case turned on when Petitioner, or his habeas counsel, received the April 9, 2004 report indicating that Petitioner was excluded as the depositor of blood on the tennis shoe, or were made aware of those results.  Thus, the undersigned granted Petitioner leave to file his sur-reply and directed Respondent to file a response to the sur-reply, addressing whether and when the April 9, 2004 DNA report was received by Petitioner or his counsel, and addressing the applicability of such facts to a determination of when the statute of limitations should run.

Respondent's response to the sur-reply stated that Respondent could not conclusively determine whether the April 9, 2004 DNA report was provided to Petitioner or his counsel during Petitioner's first habeas corpus proceedings and, thus, Respondent cannot rebut Petitioner's assertion that he did not receive the report, or was not made aware of the results contained therein, prior to the February 23, 2007 hearing in his second habeas corpus proceeding. However, Respondent's response to the sur-reply argues that Petitioner could have been able to discover this DNA report during the course of his first habeas corpus proceeding, if he had exercised due diligence. Accordingly, Respondent asserts that 28 U.S.C. § 2244(d)(1)(D) is inapplicable, and the statute of limitations should run in accordance with the calculation set forth in his Motion to Dismiss, as discussed above, which makes Petitioner's present section 2254 petition untimely.

The undersigned proposes that the presiding District Judge **FIND** that Petitioner did not have notice of the April 9, 2004 DNA results concerning the blood on the tennis shoe, which is the factual predicate of his claim in Ground One of his section 2254 petition, until at least February 23, 2007, when those test results were discussed by Trooper Myers during a hearing in Petitioner's second state court habeas proceedings. The undersigned further proposes that the presiding District Judge **FIND** that Petitioner could not have earlier discovered those test results through the exercise of due diligence.

15

Based upon this finding, the undersigned further proposes that the presiding District Judge **FIND** that the statute of limitations applicable to Petitioner's section 2254 petition should be calculated under 28 U.S.C. § 2244(d)(1)(D), running from February 23, 2007.  Tolling the period between February 23, 2007 and September 4, 2008, when Petitioner's Petition for Appeal from the denial of his second state court habeas petition, the undersigned proposes that the presiding District Judge **FIND** that Petitioner's section 2254 petition, which was filed on November 25, 2008, is timely.

<u>**RECOMMENDATION**</u>

It is respectfully **RECOMMENDED** that the presiding District Judge **DENY** Respondent's Motion to Dismiss Petition as Untimely Filed (# 11) and allow the petition to go forward on the merits. This matter should remain referred to the undersigned United States Magistrate Judge for additional proceedings.

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable David A. Faber, Senior United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(C), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) and then three days (service/mailing), from the date of filing this Proposed Findings and Recommendation within which to

file with the Clerk of this Court, specific written objections, identifying the portions of this Proposed Findings and Recommendation to which objection is made, and the basis of such objection.  Extension of this time period may be granted by the presiding District Judge for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of de novo review by the District Court and a waiver of appellate review by the Circuit Court of Appeals.  Snyder v. Ridenour, 889 F.2d 1363 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).  Copies of such objections shall be served on the opposing party and Judge Faber.

The Clerk is directed to file this Proposed Findings and Recommendation and to mail a copy of the same to Petitioner and to transmit a copy to counsel of record.

   December 18, 2009                   _Mary E. Stanley_
         Date                         Mary E. Stanley
                                      United States Magistrate Judge