IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON

MICHAEL D. HICKS,

      Petitioner,

v.                           Case No. 2:08-cv-01365

DAVID BALLARD, Warden,
Mount Olive Correctional Complex,

      Respondent.

## PROPOSED FINDINGS AND RECOMMENDATION

Pending before the court is Petitioner's Motion for Temporary Restraining Order and for Preliminary Injunction or, in the alternative, Motion for the Appointment of Counsel to Continue Proceedings (docket sheet document # 30), which was filed on February 17, 2010. Petitioner alleges that the West Virginia Division of Corrections has a policy of prohibiting inmates from providing legal assistance to each other and retaliating against those inmates who assist others, which, he asserts, is interfering with his ability to prosecute his habeas corpus action and denying him access to the courts.

On March 23, 2010, Respondent was ordered to file a response to the motion, setting forth the Division of Corrections' policy regarding legal assistance to inmates, the applicability of Johnson v. Avery, 393 U.S. 483 (1969), the number of inmate legal assistants, the number of inmates, and the availability of legal

assistance to inmates in segregation.

On March 30, 2010, Respondent filed his Response (# 38), which will be discussed in greater detail below.  On May 3, 2010, Petitioner filed a Reply (# 42).  This matter is ripe for determination.

## FACTUAL BACKGROUND AND STATEMENT OF CASE

Petitioner's Motion for a Temporary Restraining Order or a Preliminary Injunction (hereinafter "Petitioner's motion for preliminary injunctive relief") has been brought in conjunction with Petitioner's habeas corpus proceeding filed in this court under 28 U.S.C. § 2254.  At the time Petitioner filed the instant motion, his habeas corpus petition had been pending for over a year, and substantial briefing had already occurred in the matter. In fact, at the time that the instant motion was filed, the presiding District Judge had denied a Motion to Dismiss the habeas corpus petition as untimely, and Respondent had been ordered to file a response on the merits of the petition.

On March 19, 2010, Respondent filed a Motion for Summary Judgment (# 34) and a Memorandum in support thereof (# 35).  On March 22, 2010, the undersigned notified Petitioner of his right and obligation to file a response to Respondent's Motion for Summary Judgment and set deadlines for a response and reply.  (# 36).  On March 30, 2010, Petitioner filed a Response to Respondent's Motion for Summary Judgment.  (## 40 and 41).  On May

2

21, 2010, Respondent filed a Reply concerning the Motion for Summary Judgment.  (# 43).  Thus, that motion is also ripe for disposition, but will be addressed in a separate Proposed Findings and Recommendation.

Turning to the facts that are germane to Petitioner's motion for preliminary injunctive relief, Petitioner alleges that he enlisted inmate Cornell Daye to assist Petitioner with his legal proceedings, at a time when inmate Daye was working as a legal aide in the law library at the Mount Olive Correctional Complex (hereinafter "MOCC").  However, between July and October of 2009, inmate Daye was charged with institutional rules violations for possessing the legal work of other inmates in his cell, for producing documents that appeared to be an official form of the prison, and for working on other inmates' legal documents in the law library.  A letter in inmate Daye's possession at that time indicated that he was receiving payment for working on other inmates' legal cases, which purportedly violated the West Virginia Division of Corrections Policy Directive 325.00.  Thus, inmate Daye was terminated from his position as an aide in the law library. According to Petitioner, as a result of these actions, inmate Daye was afraid to continue to assist Petitioner for fear of additional disciplinary action being taken against him.

On February 17, 2010, Petitioner filed the instant motion, in which he argues that, without the assistance of inmate Daye, he

will be unable to prosecute his habeas corpus claims.  Petitioner's motion argues that the DOC's policies surrounding inmate legal assistance are unconstitutional under Johnson v. Avery, 393 U.S. 483 (1969), and Smith v. Bounds, 430 U.S. 817 (1977), and that injunctive relief requiring Respondent to allow Petitioner some assistance with his legal work is warranted.  The undersigned will address the arguments made in Petitioner's motion and Respondent's Response in turn.

**STANDARD OF REVIEW**

It is well-settled that a preliminary injunction is an extraordinary form of relief that is to be granted only if no adequate remedy at law exists, and the movant establishes a clear entitlement to relief.  See In re Microsoft Corp. Antitrust Litig, 333 F.3d 517, 524-26 (4th Cir. 2003).  The Supreme Court has set forth four factors which Petitioner must establish in order to be granted preliminary injunctive relief: (1) that he is likely to succeed on the merits; (2) that he is likely to suffer irreparable harm in the absence of preliminary relief; (3) that the balance of equities is in his favor; and (4) that an injunction is in the public interest.  Winter v. Natural Resources Defense Council, Inc., ___ U.S. ___, 129 S. Ct. 365 (2008); Real Truth About Obama v. Federal Election Commission, 575 F.3d 342 (4th Cir. 2009)(reversed on other grounds in Citizens United v. Federal Election Commission, ___ U.S. ____, 130 S. Ct. 876 (2010)).  Under

4

<u>Winter</u>, a party seeking a preliminary injunction must establish all four factors.  129 S. Ct. at 374.

Rule 65 of the Federal Rules of Civil Procedure requires Petitioner to make a showing of "specific facts in an affidavit or a verified complaint [that] clearly show that [he will suffer] immediate and irreparable injury, loss or damage" in order for a temporary restraining order to issue.  Fed. R. Civ. P. 65(b)(1)(A). Petitioner's motion must also comply with the requirements of 18 U.S.C. § 3626(a)(2), which states:

> Preliminary injunctive relief.  In any civil action with respect to prison conditions, to the extent otherwise authorized by law, the court may enter a temporary restraining order or an order for preliminary injunctive relief.  Preliminary injunctive relief must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct that harm. The court shall give substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the preliminary relief and shall respect the principles of comity set out in paragraph (1)(B) in tailoring any preliminary relief.  Preliminary injunctive relief shall automatically expire on the date that is 90 days after its entry, unless the court makes the findings required under subsection (a)(1) for the entry of prospective relief and makes the order final before the expiration of the 90-day period.

18 U.S.C. § 3626(a)(2).

## THE PARTIES' ARGUMENTS

### Petitioner's motion for preliminary injunctive relief

In <u>Johnson v. Avery</u>, 393 U.S. 483 (1969), the Supreme Court held that a blanket ban on prisoners providing legal assistance to one another in the State of Tennessee prison system was

5

unconstitutional.  The Supreme Court, however, held:

> Even in the absence of [available alternatives to the assistance provided by other inmates], the State may impose reasonable restrictions and restraints upon the acknowledged propensity of prisoners to abuse both the giving and the seeking of assistance in the preparation of applications for relief: for example, by limitations on the time and location of activities and the imposition of punishment for the giving or receipt of consideration in connection with such activities . . . . But unless and until the State provides some reasonable alternative to assist inmates in the preparation of petitions for post-conviction relief, it may not validly enforce a regulation such as that here in issue, barring inmates from furnishing such assistance to other prisoners.

Johnson, 393 U.S. at 486, 490.

> Petitioner argues that:

> although [MOCC] has created an appearance of an effort to provide inmates at the prison with effective legal assistance, the program at [MOCC] has been compromised and must be rendered inadequate to stand the test of Johnson v. Avery.  Rather than providing effective assistance to needy inmates at the prison, the policy of [MOCC] works to obstruct (selected) inmates['] right to redress complaints to the court and is therefore insufficient.

(# 30 at 9).  Petitioner also cites to a Ninth Circuit decision in

which the court found as follows:

> The fundamental constitutional right of access to the courts requires that the state provide adequate law libraries or adequate assistance from *persons trained in the law*.  If the state denies a prisoner reasonable access to a law library, the state must provide that prisoner legal assistance.  *Dependence on untrained inmate paralegals as an alternative to library access does not provide constitutionally sufficient access to the courts.* [Emphasis added].

Gluth v. Kangas, 951 F.2d 1504 (9th Cir. 1991).  (Id.)  Petitioner

argues that he is likely to succeed on his claim and that

6

substantial irreparable injury would result if an injunction is
denied because:

> [a]s set forth in Petitioner's statement of facts herein,
> the legal aides hired by the institution are not "trained
> in the law" and are greatly overwhelmed with numerous
> cases rendering assistance inadequate (Appendix-D).
> Moreover, Petitioner does not have the ability to
> understand the complexity of the issues involved in his
> case.  In sum, without the assistance of another inmate
> at the prison, Petitioner would be totally denied
> effective access to the courts and immediate irreparable
> harm would result inasmuch as once the State files its
> Answer in the present case, Petitioner would be unable to
> respond to the State's Answer [footnote omitted].

(Id. at 6).

In support of his motion, Petitioner has provided his own
affidavit in which he asserts:

> 7.   That I have no real understanding of the complex
>      legal issues in my case and that I need adequate
>      assistance from either an attorney or an inmate
>      (Jailhouse Lawyer) to help me continue on in the
>      current proceeding.
>
> 8.   That if a Jailhouse Lawyer is prohibited from
>      assisting me with my legal work I will be forced to
>      go back to asking the prison's hired "Legal Aides"
>      for help who have let me down in the past, and who
>      I fear will not render appropriate assistance due
>      to their lack of legal training and their enormous
>      case loads.
>
> 9.   That irreparable injury would result if the prison
>      is able to restrict another inmate from assisting
>      me in my legal work.

(# 30, Appendix-A).  Petitioner has also provided grievances and
other documentation concerning inmates Cornell Daye, Neil Williams
and Roundtree Goodman's discipline they received for assisting
other inmates with legal work.  (Id., Appendix-B through Appendix-

G).  Petitioner has also provided a decision by the Circuit Court of Fayette County in a proceeding instituted by inmate Daye. Daye's petition alleged, <u>inter</u> <u>alia</u>, that MOCC's policy concerning inmate legal assistance is arbitrary, capricious and unconstitutional.  (<u>Id.</u>, Appendix-H).  A review of the decision, which also addressed Daye's disciplinary proceedings, indicates that the claim concerning inmate legal assistance was dismissed for failure to exhaust administrative remedies.  The court further found, however, that Daye had not shown any actual injury as a result of said policy and procedure and, thus, notwithstanding the failure to exhaust, Petitioner's petition failed to state a claim upon which relief could be granted in that regard.  (<u>Id.</u>)

Petitioner's present motion largely focuses on his contention that he "has standing to assert his right of mutual assistance and that the prison authorities must be prevented from interfering with such right." (<u>Id.</u> at 12).  Petitioner further asserts that he has no other remedies at law.  (<u>Id.</u> at 6-7).  Petitioner's motion requests the following relief:

> 1.   To issue a Temporary Restraining Order enjoining the prison authorities from interfering with his right to access the courts, and
>
> 2.   To issue a preliminary injunction, both restraining and enjoining the above named Respondent [David Ballard], Respondent's agents, servants, employees, and representatives, from any further conduct, or activity, which hinders or has the effect of prohibiting inmates from assisting each other in providing legal advise [sic; advice], written memorandum, or possession of each other's legal

work, or otherwise prohibiting inmates from assisting each other to access the courts effectively.

(Id. at 1).

Respondent's Response

Respondent offers several reasons for finding that Petitioner is entitled to no relief on his motion for preliminary injunctive relief. First, Respondent emphasizes that Petitioner is limited to asserting a claim of denial of access to the courts under the Sixth Amendment, and cannot challenge any actions that have been taken against inmate Cornell Daye for assisting Petitioner or other inmates, which he also appears to be doing in his motion. See Fletcher v. Law, No. CV-09-73-GF-SEH, 2009 WL 4639122, *4 (D. Mont. Dec. 4, 2009)(holding that prisoner suing prison officials for not being allowed to prepare documents for other prisoners lacked standing to raise a 6th Amendment claim for the other inmates), and Anderson v. Lapolt, No. 9:07-CV-1184, 2009 WL 3232418, *9-10 (N.D.N.Y. Oct. 1, 2009)(also finding lack of standing for access to court claim of inmate removed from assisting other inmates). (# 38 at 4).

Second, Respondent asserts that Petitioner's claim for injunctive relief, as pled, must be raised in a civil rights action under 42 U.S.C. § 1983, rather than in this section 2254 habeas corpus proceeding, and that such a claim would be subject to all of the prerequisites and defenses to the same, including the

requirement of exhaustion of administrative remedies prior to filing of such a suit. (Id. at 5). Respondent directs the court to a Third Circuit case in which a claim substantially similar to Petitioner's claim concerning law library access and other prison conditions was raised in a section 2254 proceeding and was dismissed as being improperly filed. See Dandar v. Krysevig, Nos. 09-4381, 09-4382, 2010 WL 1048662 (3d Cir., Mar. 23, 2010). As noted by Respondent, the Dandar court held:

> These claims can be properly raised in a complaint under 42 U.S.C. § 1983 after he has exhausted his administrative remedies. See Leamer v. Fauver, 288 F.3d 532, 544 (3d Cir. 2002)("[U]nless the claim would fall within the 'core of habeas corpus' and require sooner release if resolved in the plaintiff's favor, a prison confinement action such as this is properly brought under § 1983."); 42 U.S.C. § 1997e(a). Dandar cannot circumvent the filing fee requirement of 28 U.S.C. § 1915(b)(1) by filing these requests for injunctive relief within proceedings under § 2254.

Id. at *1. (Id. at 5).

Respondent further asserts that Petitioner has failed to properly exhaust the available administrative remedies as required under 42 U.S.C. § 1997e(a). (Id. at 6-7). The Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a), requires a prisoner to fully and properly exhaust available administrative remedies prior to filing an action challenging conditions of confinement. See Porter v. Nussle, 534 U.S. 516 (2002); Woodford v. Ngo, 548 U.S. 81, 93 and 103 (2006). Respondent further emphasizes:

10

> It has been held that an inmate cannot file suit in federal court and subsequently perfect exhaustion of administrative remedies at a later time. <u>See</u> <u>Neal v. Goord</u>, 267 F.3d 116 (2d Cir, 2001); <u>Hock v. Thipedeau</u>, 245 F. Supp.2d 451 (D. Conn. 2003); <u>Schoonover v. Coleman</u>, * 7, No. 5:04-CV-638, 2006 WL 3230164 (S.D. W. Va., Nov. 6, 2006). "All agree that no unexhausted claim may be considered." <u>Jones v. [Bock]</u>, 127 S. Ct. 910, 926 (2007). In <u>Jones</u>, the Supreme Court held that Courts could only proceed with exhausted claims. <u>Id.</u> Because the Petitioner has not exhausted his administrative remedies, he should not be allowed to seek relief relating to his conditions either in this proceeding and without exhausting administrative remedies.

(<u>Id.</u> at 7). Respondent has provided an Affidavit of Charlene Sotak, the inmate grievance coordinator for the West Virginia Division of Corrections, which indicates that Petitioner has filed no grievance appeals with the Commissioner. (# 38, Ex. 6).

Finally, Respondent asserts that Petitioner's claim fails because the restrictions placed on inmate legal assistance at MOCC do not run afoul of the constitutional parameters set forth in <u>Johnson v. Avery</u>, and because Plaintiff has not demonstrated actual injury or a right to prospective relief. (<u>Id.</u> at 7-13). Respondent states:

> In the case at hand, unlike <u>Johnson</u>, the restriction is not a blanket ban on assisting inmates with legal work. (Exhibit 4). As noted by Mr. Crawford, there are inmate assistants, one of whom was inmate Daye, who are available to assist. Inmate Daye was the recipient of punishment for improper activities including being found to have received "consideration [for his] connection with such activities." <u>Id.</u> and (Exhibits 1-3). Similarly inmate Daye has been permitted to provide assistance. (Exhibit 4). As such, notwithstanding the fact that in the 41 years since <u>Johnson</u>, there has been a narrowing of the scope of a prisoner's right of access to courts and statutory restrictions on the ability of federal courts

11

to give prisoners prospective relief.  <u>Lewis v. Casey</u>,
518 U.S. 343, 116 S. Ct. 2174 (1996) and 18 U.S.C. §
3626.

(<u>Id.</u> at 8-9).

MOCC's rules concerning the law library program and services
may be found in Operational Procedure # 5.07, which is attached to
Respondent's Response as Exhibit 8.  (# 30-10, Ex. 8).  The
Operational Procedure discusses the duties and responsibilities of
a law library aide and states in pertinent part:

> 13.  Law Library Aides/Representatives or Library Clerks
> do not have the right to possess another inmate's
> legal work.  Any Law Library Aides/Representatives
> or Library Clerk found to be in the possession of
> another inmate's legal materials shall be
> considered to be in possession of contraband and
> therefore subject to possible disciplinary action
> in accordance with WVDOC Policy Directive 325.00
> "Discipline of Inmates." Additionally, any inmates
> who allows another inmate to take possession of his
> legal materials will risk the possibility of losing
> all of said material as it is disposed of in
> accordance with proper evidence procedures.
>
> 14.  The inmates who are assigned and paid to act as Law
> Library Aides/Representatives are under direct
> supervision of the MOCC Librarian.  As a result,
> all research and documentation preparation shall be
> completed in the MOCC Library area.

(# 38-10, Ex. 8).  Respondent concedes that this policy does not
directly state that inmates who are not Law Library
Aides/Representatives may not possess another inmate's legal
materials or assist another inmate with legal document preparation,
but asserts that this is a matter of state law:

> The Petitioner correctly notes that the restriction on
> inmates performing work for other inmates is not written

12

within the Operation Procedure.  However, the Respondent would note that questions of the sufficiency of the issuance of a state prison rule would be a question of state law.  It is well established that the Eleventh Amendment precludes Federal Courts from exercising jurisdiction over state officials for injunctive relief relating to alleged violations of state law.  <u>Suarez Corp. Industries v. McGraw</u>, 125 F.3d 222 (4th Cir. 1997) citing <u>Penhurst State School & Hospital v. Halderman</u>, 465 U.S. 89, 104 S. Ct. 900 (1984); <u>see also</u> <u>Martinson v. Violent Drug Traffickers Project</u>, No. CIV. A. 95-2161 (CRR), 1996 WL 411590 (D.D.C. July 11, 1996).

(# 38, at 13 n.11).

This policy is further discussed in an Affidavit of Mark Crawford, the MOCC Law Librarian, which is attached to Respondent's Response as Exhibit 4.  The affidavit states:

> 11. That the [MOCC] has instituted a rule seeking to restrict non inmate assistants from preparing legal documents for other inmates.

> 12. That the purpose behind this is to reduce incidents of unauthorized trading and selling by inmates upon the yard to reduce inmate indebtedness and to cease the practice of inmates attempting to strong arm other inmates into preparing legal documents.

> 13. That an inmate may provide practical assistance or pointers to an inmate provided the inmate is not doing full work for the other inmate unless that individual is a legal assistant assigned to the inmate.  The purpose of this rule is to reduce the above-referenced incidents.

(# 38-5, Ex. 4).  Mr. Crawford's affidavit further addresses the number of inmate law library aides at MOCC and provides further details concerning the assistance that has been offered to Petitioner since inmate Daye was fired as a law library aide.  The affidavit states in pertinent part:

6.  Presently [MOCC] has 3 inmates dedicated to
    assisting inmates on the main line population and 2
    dedicated to assisting in the segregation units,
    with one additional position for main line open.
    That of the three inmates assisting the general
    population one presently has 27 inmates he is
    working with, another has 31 and the third has 21.

7.  The two inmates serving the segregation units
    assist [] through the performance of legal research
    and providing materials and forms.

8.  That inmate Hicks is not housed in the segregation
    unit.

9.  That [MOCC] has found that this number has been
    adequate to serve the demands placed upon it by the
    inmate population.   There are 1020 inmates at
    [MOCC] with two units of 96 inmates in segregation.

                              *  *  *

14. I have informed inmate Daye that he could help
    inmate Hicks in the library.  Specifically Daye can
    discuss this matter, take notes, write out items.
    However, paid assistants would have to use the
    equipment to type up a document.

15. That should inmate Daye desire to assist inmate
    Hicks he is free to do so within the limits set
    forth above.  If inmate Hicks desires assistance in
    typing the document he will be assigned a legal
    assistant, whom both himself and inmate Daye are
    free to work with.

16. That I have not received a request from inmate
    Hicks for the assignment of another assistant.

(Id.)

    According to Respondent's Response, on March 24, 2010, Mr.

Crawford met with Petitioner and assigned him a legal aide, Eugene

Anderson.   (# 38 at 3 and Ex. 5).   Mr. Crawford also met with

Petitioner, Anderson and inmate Daye and discussed the above

limitations.  (<u>Id.</u>)

Turning to Respondent's argument concerning actual injury, Respondent's Response states as follows:

> It has been held that prisons must provide law libraries or provide access to the courts through legal assistants.  <u>Bounds v. Smith</u>, 430 U.S. 817, 97 S. Ct. 1491, 52 L. Ed.2d 72 (1977).  However, <u>Bounds</u> was not the Supreme Court's last word on prison law libraries. "<u>Bounds</u> did not create an abstract, free standing right to a law library or legal assistance; rather, the right that <u>Bounds</u> acknowledged was the right of access to the courts."  Syl. Pt. A, <u>Lewis v. Casey</u>, 518 U.S. 343, 116 S. Ct. 2174 (1996), <u>citing</u> <u>Bounds</u> 430 U.S., at 817, 821, 828, 97 S. Ct., at 1492-1493, 1494, 1498.  In <u>Lewis</u>, the Court held that a prisoner must establish actual injury before a violation of <u>Bounds</u> could be established.  The "requirement that an inmate alleging a violation of <u>Bounds</u> must show actual injury derives ultimately from ***the doctrine of standing***, a constitutional principle that prevents courts of law from undertaking tasks assigned to the political branches."  <u>Lewis</u>, 518 U.S. at 349, 116 S. Ct. at 2179 (emphasis added), <u>citing</u> <u>Allen v. Wright</u>, 468 U.S. 737, 750-752, 104 S. Ct. 3315, 3324-3325, 82 L. Ed.2d 556 (1984); <u>Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.</u>, 454 U.S. 464, 471-476, 102 S. Ct. 752, 757-761, 70 L. Ed.2d 700 (1982).  Without an actual injury, the Court in <u>Lewis</u> held that a prisoner merely "establishing that his prison's law library or ***legal assistance program*** is subpar in some theoretical sense . . . . would be the precise analog of the healthy inmate claiming constitutional violation because of the inadequacy of the prison infimary."

(<u>Id.</u> at 8-10).

Respondent further asserts that Petitioner has no constitutional right to demand that prison officials specifically assign inmate Daye to assist him.  Citing <u>Shaw v. Murphy</u>, 532 U.S. 223 (2001), Respondent argues that MOCC's prohibition on non legal aide prisoners possessing another inmate's legal papers does not

violate the First Amendment.  As noted by Respondent:

> In Shaw, the Supreme Court has held that prisoners
> do not have a special First Amendment right to provide
> legal assistance to other prisoners.  Id.  Instead, the
> Court ruled that the standard of review would be the four
> pronged test established under Turner v. Safley, 482 U.S.
> 78, 89, 107 S. Ct. 2254, 2261, 96 L. Ed.2d 64 (1987).  In
> Turner, the Supreme Court articulated four factors
> relevant to this determination: (1) whether a valid
> rational connection exists between the prison regulation
> and the legitimate governmental interest offered to
> justify it; (2) whether alternative means of exercising
> the right exist that remain open to inmates; (3) the
> likely impact the accommodation of the alleged
> constitutional right would have on the guards, other
> inmates, and the allocation of prison resources; (4) the
> absence of ready alternatives.  Turner, 482 U.S. at 89-
> 90, 107 S. Ct. at 2261-62.
>
> In the case at hand, officials clearly have a
> legitimate interest in eliminating the unauthorized
> trading and selling of legal work in a "black market"
> fashion among its prisoners.  Johnson supra and (Exhibit
> 4).  Likewise there is the desire to reduce unauthorized
> indebtedness and "strong arming" of inmates.  (Id.)  As
> a result, the limitations on inmates who are not inmate
> legal aides preparing documents furthers this goal.
> Similarly, inmates have alternative means in that they
> can prepare their own documents and illiterate inmates
> can obtain assistance in typing and document preparation
> from an inmate legal aide.  (Id.)  Even non-legal aides
> have the ability to provide assistance and help, unlike
> Johnson.  To allow inmates unfettered ability to prepare
> such documents simply encourages unauthorized trading and
> selling, indebtedness and even strong arm tactics.
> (Exhibit 4).  This creates problems for the correctional
> system.  As a result, the present practice is designed to
> effectuate this goal.

(Id. at 11-12).

## Petitioner's Reply

On May 3, 2010, Petitioner filed a Reply to Respondent's
Response to his Motion for a Temporary Restraining Order and for

16

Preliminary Injunction (# 42).  Petitioner's Reply first asserts
that he should be excused from the exhaustion requirement because
of the emergent nature of his request and that further attempts at
exhaustion would prove futile.  Petitioner's Reply states:

> Petitioner's situation is critical and the relief
> sought based upon an emergency arising wholly from
> Respondent's attempts to thwart Petitioner's access to
> the courts and therein violate Petitioner's
> constitutional rights.  As such he did not grieve the
> issue of being provided legal assistance from another
> inmate, nor did Petitioner request that an official MOCC
> inmate legal aide assist him (see Appendix-A).  However,
> where Petitioner had a pending civil suit in this Court
> and where his current legal assistant was being
> retaliated against by Respondent, the totality of those
> actions by Respondent created a bar to Petitioner's
> access to the courts and precipitated further events
> where Petitioner was unable to properly pursue his legal
> affairs.  Additionally, the retaliation issues were fully
> exhausted by Petitioner's legal assistant, Cornell F.
> Daye, and where time was extremely short, any attempt by
> Petitioner to exhaust his administrative remedies would
> not promote the goals of exhaustion.  See Gambino v.
> Morris, 134 F.3d 156 (3d Cir. 1998)[1]; Lyons v. U.S.
> Marshals, [840 F.2d 202] (1988).

(# 42 at 3-4).

Petitioner then discusses specific exceptions to the
exhaustion requirement, which he believes should excuse him from
having to exhaust his administrative remedies in this case.  His
reply states:

> Courts have likewise found that exceptions to
> exhaustion requirement may also be recognized where 1) it

---

[1] The undersigned notes that the only discussion of exhaustion
of administrative remedies in this opinion is in a concurring
opinion, which has no precedential value.  However, the undersigned
will address the subject of futility as necessary.

17

would not promote the goals of the judicial system, 2) exhaustion would be futile given the totality of the circumstances, 3) delay in filing the motion would subject the Petitioner to "irreparable injury," or 4) the Petitioner raises a retaliation claim against the adverse party.  See, e.g., Carling v. Peters, [2000 WL 1022959 (E.D. Pa. 2000); Erin Davenport v. Wal-Mart Stores East, L.P., Civil Action No. 3:08-cv-119, 2008 U.S. Dist. Lexis 37084 [2008 WL 1984259] (2008).  In the present case Petitioner believes he falls under all of the previously enumerated exceptions to the exhaustion requirement. Both 1 & 2 noted above do not promote the goals of the judicial system and the same would be futile given the totality of the circumstances surrounding this case.  As previously indicated, Cornell Daye, Neil Williams, Luther Basham, Anthony Pfeiffer (See Appendix B) and other inmates at MOCC fully exhausted all administrative remedies on the issue of inmates assisting other inmates with legal work, and the ensuing retaliation arising from filing grievances on these issues.  The above inmates argued that the MOCC inmate legal assistance program was manipulated to produce policies and procedures that were unconstitutional.  Their rights as articulated in Johnson v. Avery, (citation omitted), to assist one another in legal matters and to gain meaningful access to the courts in the face of unavailability of other means is unreasonably abridged by Respondent, who responds by reciting possible scenarios of security threats posed by Jailhouse Lawyers activities, i.e., possible acts of strong arming, trading and selling legal work, extortion, etc.  Regardless, these same possible scenarios exist through the sanctioned activities of "official" MOCC legal aides, even though current MOCC rules are allegedly designed to curtail such activities and abuses.

(Id. at 4-5).  Petitioner contends that requiring him to exhaust the same administrative remedies as those previously exhausted by Cornell Daye and the others mentioned above would be a waste of judicial resources and would place him in further jeopardy of retaliation from Respondent.  (Id. at 5).  Petitioner further asserts that delaying Petitioner's request for injunctive relief by requiring exhaustion would cause him "irreparable injury."

18

Petitioner states:

> Given the circumstances of the situation, it was
> unrealistic to expect Petitioner to fully exhaust his
> administrative remedies in the period after the District
> Court returned its findings. Moreover, the chilling
> effect of open retaliation precluded Petitioner from
> finding someone willing to assist him in securing the
> adequate assistance he required both for crafting and
> filing an injunction and for pursuing his underlying
> habeas action.
>
>                         *  *  *
>
> Thus, where Petitioner's legal aide fully exhausted his
> administrative remedies and claiming retaliation for
> providing legal assistance, this operates as an exception
> to the exhaustion requirement, since his legal aide was
> the only person available at the time to adequately
> protect his interests other than an assignment of
> attorney from the Court.

(Id. at 5-6).

Petitioner's reply next argues that he has standing to

challenge the MOCC policy prohibiting inmates from assisting one

another in legal matters, whether or not he can demonstrate an

actual injury in his own legal pursuits. Petitioner cites to

Anderson v. Lapolt, 2009 WL 3232418, a case out of the Northern

District of New York, which held:

> Notwithstanding the actual injury requirement, other
> courts in this district have held that prisoners may have
> standing to "challenge official action that prevents them
> from assisting other prisoners in the absence of
> reasonable alternatives." Hodges v. Jones, 873 F.
> Supp.2d 737 (N.D.N.Y. 1995); Auleta v. LeFrance, 233 F.
> Supp.2d at 398-403. These rulings rely principally on
> the Supreme Court's decision in Johnson v. Avery, 393
> U.S. 483, 89 S. Ct. 747, 21 L. Ed.2d 718 (1969).

Petitioner further states:

Here, Petitioner is not arguing on behalf of Daye or any other inmate, but rather, argues that the actions taken against Daye and the overall policies and procedures enacted by Respondent have violated Petitioner's rights through exercising a chilling effect on Petitioner's access to the courts to such a degree that his rights and ability to file timely, cognizant replies before the Court is fatally hampered. By illustration, Cornell Daye argued his own case and provided grievances in the original motion, demonstrating he was unable to respond to motions filed by prison officials in a prior conditions of confinement suit filed in Fayette County, West Virginia. Daye also demonstrated that because of the actions of MOCC officials he was unable to respond in a timely manner to previous lawsuits filed in the So. Dist. of WV.

(Id. at 6-7). Petitioner further asserts that the court must make a determination of "whether the MOCC legal assistance program overall is constitutionally valid." (Id. at 10).

Finally, Petitioner's Reply argues that Respondent's stated reasons for the prohibition against inmate assistance with legal matters is a pretext for constricting Petitioner's rights and is an exaggerated response to institutional security concerns that is inconsistent with other rules established by the DOC. Petitioner argues that Respondent's limitation of five inmate Law Library Aides for the whole prison population actually results in the Law Library Aides being able to "effectively sell their services to the 'highest bidder,'" which counter-balances the purported legitimate penological concerns asserted as the rationale behind the policy. (Id. at 8-9).

Petitioner further asserts that allowing inmates to provide practical advice and assistance to another inmate, without having

access to that inmate's legal documents is incongruous, and that some inmates have nevertheless been met with retaliation for such attempts, which has "caused an overall chilling effect on all inmates . . . ." (Id. at 9).

## ANALYSIS

Circumstances indicate that Petitioner's request for injunctive relief will likely be denied. First, Petitioner essentially concedes that he did not exhaust administrative remedies prior to filing his Motion for a Temporary Restraining Order or Preliminary Injunction, and Petitioner has not produced any evidence of exhaustion to counter the affidavit of Charlene Sotak. Petitioner may not rely on the exhaustion efforts of other inmates, who may be in different circumstances.

Petitioner has not demonstrated that exhaustion would be futile, nor has he demonstrated exceptional circumstances to warrant excusing the exhaustion requirement. Accordingly, this court must dismiss Petitioner's request for preliminary injunctive relief for failure to exhaust administrative remedies. Furthermore, even if Petitioner's claim were exhausted, as noted by Respondent, it is not properly raised in this section 2254 proceeding.

Moreover, Petitioner has not demonstrated any actual injury, as required by Lewis v. Casey, 518 U.S. at 351-53. Notwithstanding the removal of inmate Daye as a Law Library Aide, Petitioner has

been offered the assistance of both Daye and another Law Library Aide.  Whether through proper channels or not, Petitioner completed the briefing of his habeas corpus claims, which are now ripe before this court.

For these reasons, the undersigned proposes that the presiding District Judge **FIND** that Petitioner cannot make a successful showing of the elements required for this court to grant preliminary injunctive relief.  Nor has Petitioner demonstrated exceptional circumstances that would warrant the appointment of counsel to represent Petitioner at this stage of his habeas corpus proceedings.

**RECOMMENDATION**

Accordingly, it is respectfully **RECOMMENDED** that the presiding District Judge **DENY** Petitioner's Motion for Temporary Restraining Order (# 30-1), and for Preliminary Injunction (# 30-2), or in the alternative, for Appointment of Counsel to Continue Proceedings (# 30-3).

The parties are notified that this "Proposed Findings and Recommendation" is hereby **FILED,** and a copy will be submitted to the Honorable David A. Faber, Senior United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) and then three days (mailing) from the date of filing

this "Proposed Findings and Recommendation" within which to file with the Clerk of this Court, specific written objections, identifying the portions of the "Proposed Findings and Recommendation" to which objection is made, and the basis of such objection. Extension of this time period may be granted by the presiding District Judge for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of <u>de novo</u> review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. <u>Snyder v. Ridenour</u>, 889 F.2d 1363 (4th Cir. 1989); <u>Thomas v. Arn</u>, 474 U.S. 140 (1985); <u>Wright v. Collins</u>, 766 F.2d 841 (4th Cir. 1985); <u>United States v. Schronce</u>, 727 F.2d 91 (4th Cir. 1984). Copies of such objections shall be provided to the opposing party and Judge Faber.

The Clerk is directed to file this "Proposed Findings and Recommendation" and to mail a copy of the same to Petitioner and to transmit a copy to counsel of record.

 June 18, 2010 
        Date

*Mary E. Stanley*
Mary E. Stanley
United States Magistrate Judge

23