IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON

MICHAEL D. HICKS,

       Petitioner,

v.                                        Case No. 2:08-cv-01365

DAVID BALLARD, Warden,
Mount Olive Correctional Complex,

       Respondent.

## MEMORANDUM OPINION AND ORDER

Before the court is Respondent's motion for summary judgment (Doc. # 34).  For reasons more fully explained below, the court **GRANTS** Respondent's motion for summary judgment and **DIRECTS** the Clerk to remove this case from the court's docket.

### I. Factual and Procedural Background

Petitioner, Michael D. Hicks ("Hicks"), is currently serving a life sentence without the possibility of parole for a conviction of first degree murder.  Petitioner was convicted in 1998 following trial by jury in the Circuit Court of Kanawha County, West Virginia.  The jury found that Hicks had shot and killed Terrence Spencer ("Spencer") following an altercation arising from a proposed drug transaction.

The State relied on eyewitness testimony from Terri Bannister ("Bannister") and Carli Campbell ("Campbell"), both allegedly present at the time of the shooting, in their case.

1

Additionally, the State introduced DNA evidence purporting to show Hicks' blood on certain objects recovered from the crime scene.  Hicks did not present evidence in his defense.  Instead, Hicks' counsel attempted to undermine the credibility of the State's witnesses through cross-examination.  The Circuit Court sentenced Hicks on November 18, 1998.  Following his incarceration, Petitioner appealed his conviction to the Supreme Court of Appeals of West Virginia, which denied Hicks' appeal.

On January 5, 2001, Hicks filed a Petition for a Writ of Habeas Corpus in the Circuit Court of Kanawha County.  The court held an evidentiary hearing in the matter on March 11, 2004.  On May 10, 2004, the Circuit Court addressed the merits of Hicks' claims and denied the Petition.  Hicks then appealed the Circuit Court's denial of his Petition for Writ of Habeas Corpus to the Supreme Court of Appeals of West Virginia.  The Supreme Court of Appeals rejected Hicks' appeal.

On August 1, 2006, Hicks filed yet another Petition for Writ of Habeas Corpus in the Circuit Court of Kanawha County.  In filing his second Petition, Hicks relied on the Zain III case from the Supreme Court of Appeals of West Virginia, which allowed successive habeas petitions by inmates who may have fallen victim to inaccurate DNA testing by State authorities during a particular time frame.[1]  The Circuit Court dismissed Hicks'

---

[1] In the Matter of: Renewed Investigation of the State Police Crime Laboratory, Serology Division, 633 S.E.2d 762 (W. Va.

second Petition, concluding that Hicks did not come within <u>Zain</u> <u>III</u>'s requirements and therefore could not rely on that particular avenue for relief.  Hicks once again appealed to the Supreme Court of Appeals of West Virginia, but his appeal was denied.

Hicks filed the instant Petition for Writ of Habeas Corpus, pursuant to 28 U.S.C. § 2254, on November 25, 2008.  Hicks first contends that the evidence presented at his trial relating to identification of his DNA on certain items found at the crime scene was false, thereby rendering his trial fundamentally unfair.  Second, Hicks argues that the state intentionally failed to conduct DNA testing on other items found at the scene of the crime, a failure which Hicks alleges resulted in prejudice to him.  Hicks contends that had the state conducted testing on these items as well, he would not have been found guilty of murdering Spencer.

By Standing Order, this action was referred to United States Magistrate Judge Mary E. Stanley for submission of findings and recommendations regarding disposition, pursuant to 28 U.S.C. § 636(b)(1)(B).  Magistrate Judge Stanley submitted to the court her Proposed Findings and Recommendation on November 15, 2010, in which she recommended that the district court grant Respondent's motion for summary judgment.

In accordance with the provisions of 28 U.S.C. § 636(b), the

2006)(popularly known as "<u>Zain III</u>").

parties were allotted fourteen days, plus three mailing days, in which to file any objections to Magistrate Judge Stanley's Proposed Findings and Recommendation.

## II. Petitoner's Objections

Hicks filed his objections to Magistrate Judge Stanley's Proposed Findings and Recommendation on December 29, 2010.  As such, his objections were timely.  This court has conducted a <u>de novo</u> review of the record as to all of the objections, and addresses each objection in turn.  <u>See</u> 28 U.S.C. § 636(b)(1) ("A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings and recommendations to which objection is made.").

### A. Lt. Myers' allegedly false testimony

Hicks objects to Magistrate Judge Stanley's finding that (a) "petitioner has not shown a reasonable likelihood that Lt. Myers' original testimony influenced the jury's guilty verdict," and (b) that "petitioner has not demonstrated a constitutional violation based upon Lt. Myers' failure to perform DNA testing on additional evidence."  <u>See</u> Objections to Proposed Findings and Recommendation (Doc. # 49), p. 5.  Petitioner argues that

> Lt. Myers falsely testified at Petitioner's trial that he [Myers] could not determine who was the donor of the blood on the wall molding and the tennis shoe, that the State used his [Myers'] testimony and knew it to be false, and that the testimony was material to Petitioner's guilt or innocence.

4

See id.  In a habeas proceeding under 28 U.S.C. § 2254, the relevant inquiry is whether a prior court's determination of the question at hand resulted in "a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  See 28 U.S.C. § 2254(d)(1).

Hicks relies upon Giglio v. United States, which held that "deliberate deception of a court and jurors by the presentation of known false evidence is incompatible with 'rudimentary demands of justice.'"  Giglio v. United States, 405 U.S. 150, 153 (1972)(citing Mooney v. Holohan, 294 U.S. 103, 112 (1935)). Giglio followed Brady v. Maryland, 373 U.S. 83 (1963), and further elaborated the protections that defendants are entitled to with respect to government falsification or suppression of evidence.  Under Giglio, a Petitioner is entitled to a new trial only if "the false testimony could . . . in any reasonable likelihood have affected the judgment of the jury . . . ." Giglio, 405 U.S. at 154 (citing Napue v. Illinois, 360 U.S. 264, 271 (1959)).

Hicks specifically asserts that one particular part of Lt. Myers' testimony at trial was false:

> Ok.  On the tennis shoe and the closet door
> trim, the DNA, the DQ Alpha that I identified
> from that blood was consistent with both
> Michael Hicks and Terri Bannister.  I cannot
> distinguish which one it could have come
> from.

5

See 1998 Trial Transcript, attached as Exhibit 3 to Respondent's
Motion for Summary Judgment (Doc. # 33), p. 16.  Hicks contends
that Lt. Myers' above-quoted words were meant to convey the
impression that Myers' had no method or technology available to
him for determining which person, Hicks or Bannister, the DNA
sample came from.  See Objections to Proposed Findings and
Recommendation (Doc. # 49), pp. 8-9.  In other words, Hicks
claims that Myers' testimony was intended to make the jury
believe that no more discriminating test, other than DQ Alpha,
could have been used to investigate the blood sample.  This is,
according to Hicks, what the words "I cannot distinguish which
one it could have come from" mean.  Adopting this particular
interpretation of Myers' words, Hicks then sets out to counter
Myers' statement by providing evidence that more discriminating
tests were in fact available at the time of, and even prior to,
Myers' testimony at Hicks' 1998 trial.  See id. pp. 6-8.

     Hicks' interpretation of Myers' words, however, is not borne
out by the context of Myers' statements.  A reading of the
preceding and following comments from the trial transcript makes
clear that Myers was not commenting on the unavailability of
other, more sophisticated and discriminating DNA tests which he
could have run on the blood samples.  Instead, Myers' statement
simply sought to explain how the results of the largely
inconclusive DQ Alpha DNA test related to the case.  Myers'

                                6

comment on his inability to distinguish who the blood came from is a logical conclusion following on his previous assertion in the preceding sentence that the DQ Alpha DNA test results were consistent with both Hicks and Bannister.  This was a perfectly true statement.  It strains credulity to read Myers' words otherwise.  Myers' meaning also seems to have been clear enough to Hicks' counsel, who did not question Myers as to what he meant by these words on cross-examination.  Myers said nothing deceptive, and Hicks' attempt to twist Myers' words into having a different meaning is unavailing.

Hicks also alleges that Myers "deceptively implied that the blood had to come from one of these [Hicks or Bannister] suspects," when in fact the genotype identified by the DQ Alpha test could have come from one in six African Americans.  See id. at 9.  Once again, there is nothing deceptive about Lt. Myers' testimony.  While it is true that Lt. Myers initially mentioned only Hicks' and Bannister's names, Myers made it clear on cross-examination that the blood sample could have come from "any person who possessed that particular DNA type."  See 1998 Trial Transcript, attached as Exhibit 3 to Respondent's Motion for Summary Judgment (Doc. # 33), p. 25.  Myers followed up that statement by saying "which, in this case, would be approximately one in six individuals of African-American descent."  See id. Thus, it was Myers himself who volunteered the very statistic on

cross-examination that Hicks is now trying to suggest Myers wanted to hide on direct examination. Myers' initial testimony regarding the blood belonging either to Hicks or Bannister makes perfect sense given that those were the individuals of most immediate interest to the jury. Who else the blood could have come from was also a relevant consideration that would have put the test results' ability to pinpoint the guilty party in proper perspective. The jury had the benefit of this inquiry since Hicks' counsel questioned Lt. Myers about it on cross-examination. Lt. Myers did nothing untoward, however, by not addressing it on direct examination.

### B. The materiality of Lt. Myers' testimony

The court next addresses Hicks' second objection; namely, that Magistrate Judge Stanley incorrectly found that "Petitioner has not shown beyond a reasonable likelihood that Lt. Myers' testimony influenced the jury's verdict. . . ." See Objections to Proposed Findings and Recommendation (Doc. # 49), pp. 10-11. Given the court's finding that Lt. Myers' statement was not false, this objection is irrelevant under the applicable law. Giglio, 405 U.S. at 154 (citing Napue v. Illinois, 360 U.S. 264, 271 (1959)).

### III. Conclusion

Having overruled Petitioner's objections, the court **CONFIRMS** and **ACCEPTS** Magistrate Judge Stanley's proposed findings and recommendation**, GRANTS** Respondent's motion for summary judgment and **DISMISSES** Hicks' Petition for Writ of Habeas Corpus, pursuant to 28 U.S.C. § 2254.

Additionally, the court has considered whether to grant a certificate of appealability.  <u>See</u> 28 U.S.C. § 2253(c).  A certificate will not be granted unless there is "a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  The standard is satisfied only upon a showing that reasonable jurists would find that any assessment of the constitutional claims by this court is debatable or wrong and that any dispositive procedural ruling is likewise debatable. <u>Miller- El v. Cockrell</u>, 537 U.S. 322, 336-38 (2003); <u>Slack v. McDaniel</u>, 529 U.S. 473, 484 (2000); <u>Rose v. Lee</u>, 252 F.3d 676, 683-84 (4th Cir. 2001).  The court concludes that the governing standard is not satisfied in this instance. Accordingly, the court **DENIES** a certificate of appealability.

The Court **DIRECTS** the Clerk to remove this case from the court's docket and to forward a copy of this Memorandum Opinion & Order to all counsel of record and Petitioner, pro se.

It is **SO ORDERED** this 18th day of March, 2011.

ENTER:

David A. Faber
Senior United States District Judge

9